

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Hon. J. B. McDonald, Commissioner
Department of Agriculture
Austin, Texas

Dear Sir:

Opinion No. O-7013
Re: The Seed and Plant Board
members and inspectors may,
under the given facts, be
reimbursed out of State funds
for expenses incurred by them
in attending the meeting that
has been called by the State
Seed and Plant Board Chairman.

Your letter of January 2, 1946, presents the following facts and requests our opinion thereon:

"Under the provisions of the Field Seed Certificate Law (Articles 56-57 inclusive, R. C. S. 1925, Chapter 93, Acts 1st C. S. 41st Leg., and House Bill No. 291, R. S. 48th Leg.) with particular reference to the provisions of House Bill No. 291, which states, among other things, that the 'Board shall meet at such times and places as the Chairman may order'; in this connection, Dr. E. P. Humbert of College Station, the Chairman of the State Seed and Plant Board, has called a meeting of the Board and Inspectors, provided for under the provisions of the law, for Dallas, Texas, on January 18 and 19.

"By calling a meeting at this time, it will coincide with the annual meeting of the certified seed growers, and it will afford the Board an opportunity of interviewing prospective seed Growers as provided for in the standards, thereby avoiding the necessity of holding several other meetings throughout the State, and it will materially reduce the overall expenses of said Board. It would be highly desirable to have the Field Inspectors stationed at various points over the State, to meet with the Board at this time for a general discussion of prospective acreages, inspection requirements and technique.

"We would appreciate your advice as to whether or not, in the light of the above facts and provisions of the Field Seed Law, this trip would be considered as State business and whether or not the Seed and Plant Board members and inspectors could be reimbursed out of State funds for expenses incurred."

Sec. 11a of Chapter 378 of the Acts of the 49th Legislature, 1945, the Appropriation Act for State Departments, page 943, provides that "no traveling expenses shall be claimed, allowed or paid unless incurred while traveling on State business."

Your inquiry is therefore answered by a determination of whether or not the proposed trip to Dallas by the members of the State Seed and Plant Board and certain inspectors of the Department of Agriculture is, in fact, a trip the purpose of which is "State business."

In answer to your inquiry, we must first look to the duties of the State Seed and Plant Board. Article 57 of the Revised Civil Statutes of Texas, 1925, as amended, reads as follows:

"The State Seed and Plant Board (formerly designated as the State Board of Plant Breeder Examiners) shall be composed, ex-officio, of the Chief of the Division of Field Seed Certification of the State Department of Agriculture, the Head of the Department of Genetics of the Agricultural and Mechanical College of Texas, and the Head of the Department of Plant Industry of the Texas Technological College. Said Board shall elect annually one of their number as chairman and another as secretary. The Board shall meet at such times and places as the chairman may order. All applicants for license as Registered Plant Breeder and Certified Seed Grower shall furnish such information as the Board may require and shall appear in person before said Board if the Board requests it. The Board shall prescribe the qualifications of inspectors that may be employed under this law."

Article 59 provides for applications to be presented to the State Seed and Plant Board for registration as "Registered Cottonseed Breeder", and Art 61 provides for like applications to the Board for registration as "Certified Cottonseed Growers". Each of such applicants is required to furnish the Board certain information as set forth in these Articles. Article 63 specifies that the Board "shall prepare suitable forms of application for registration for Cottonseed Breeders and Cottonseed Growers and shall establish rules and regulations, tests and standards to carry into effect the purposes of this law, 1 . ."

Article 67 provides for the cancellation of registration of a Registered Cottonseed Breeder or Certified Cottonseed Grower by the Commissioner of Agriculture and for an appeal from the Commissioner's decision to the State Seed and Plant Board.

Section 2 of Article 67a provides for the registration of plant breeders by the Commissioner of Agriculture when the application has been approved by the State Seed and Plant Board. Like provision is made for the registration of certified seed growers.

Section 3 of Article 67a, reads as follows:

"The State Board of Plant Breeder Examiners created by the Chapter 2 of Title 4, Vol. 1, of Revised Civil Statutes of 1925 to be hereafter called the State Seed and Plant Board, shall certify to the Commissioner of Agriculture the names of persons, firms, association, or corporations who are eligible to qualify as Registered Plant Breeders, and names of persons, firms, associations or corporations who are eligible to qualify as Certified Seed Growers; it shall promulgate rules, regulations, test and standards governing the production of Registered Planting Seed and Certified Plainting Seed; shall prepare suitable blank forms to be used in making application for recognition as Registered Plant-Breeders and Certified Seed Growers, and shall prescribe the qualifications of inspectors to be employed under the provisions of this Act (Art. 67a; P.6. Art.1555a);

it shall hear and pass upon all applications for
Registered Plant Breeders and Certified Seed Growers
before certifying the same to the Commissioner of
Agriculture; it shall collect a fee of Ten ($10.00)
Dollars from each applicant and deposit same in the
State Treasury; it shall prescribe fees to cover the
cost of administering this Act (Art. 67a; P. C. Art.
1555e), which shall not exceed twenty-five (25¢) cents
per acre for cotton, nor more than one per cent of the
retail value of the average production of such other
field seed on such land as may be applied on, and shall
have full power and authority to determine the eligi-
bility of persons, firms, associations or corporations
applying for recognition as Registered Plant Breeders
or Certified Seed Growers. Before certifying any ap-
plicant it shall consider his or its reputation for
honesty, competency and fair dealing, his or its facil-
ities for producing planting seed of a high degree of
purity and excellence, the quality of planting seed
owned or controlled by the applicant to be used in the
production of Registered Planting seed or Certified
Planting Seed. Provided that the production of Certi-
fied Seed shall be not less than the degree of purity
and excellence set for Registered Seed and in the con-
sideration of an applicant for recognition as a Registered
Plant Breeder it shall investigate his skill as a Plant
Breeder or the skill of someone in his or its employment."

By Article 63, the Commissioner of Agriculture is required
to employ a sufficient number of competent inspectors to inspect
fields of cotton, and facilities for ginning, storing and handling
cottonseed. By Section 4(a) of Article 67a, the Commissioner of
Agriculture is directed to appoint a sufficient number of inspec-
tors, nominated by the State Seed and Plant Board to carry into
effect the provisions of the registration law.

It is thus apparent that the duties of the Board may be
summarized as follows:

(1)  To pass on the qualification of inspectors;

(2)  To prepare suitable forms of application for
     registration;

(3)  To certify to the Commissioner of Agriculture
     the names of those persons who have applied
     and who are found eligible to be registered
     as the registered plant breeders or certified
     seed growers;

Hon. J. E. McDonald, page 5

(4) To promulgate rules, regulations, tests
and standards governing the production
of registered and certified planting
seed;

(5) To hear and pass on all applications for
registration;

(6) And to act as an appellate board when the
Commissioner of Agriculture has seen
fit to cancel a registration.

Therefore, in answer to your inquiry, if the purpose of
the Board's meeting in Dallas is to perform any of the duties out-
lined above, we hold, and you are advised that the same is "State
business" within the meaning of the current Appropriation Bill.
From the facts stated in your letter, that the Board will "inter-
view prospective seed growers", it would appear that the Board
would be acting in compliance with Articles 57, 59, 61 and 67a
(Sec. 3) in securing the information required from applicants for
registration as certified growers or breeders. It is pointed out,
however, that those Articles relate strictly to <u>applicants</u> and
not to prospective growers who are not applicants. Also, from the
facts stated in your letter, it would appear that the meeting of
the Board might also be for the purpose of promulgating rules,
regulations, tests and standards as required of it under the law.
If any of these duties are to be performed by the Board in Dallas,
then you are advised that the same is "State business". If the
Board determines that its business can be transacted more expedi-
tiously in Dallas than at some other point, the traveling expenses
of the Board are allowable under the law.

With reference to the expenses of the inspectors, the
facts stated in your letter seem to indicate that they are to be
called to Dallas at the instance and request of the State Seed
and Plant Board to meet with it and to discuss "prospective
acreages, inspection requirements, and technique". In this connec-
tion we call your attention to the provisions of Articles 63 and
67a which provide that all such inspectors are appointed by and are
responsible to you as Commissioner of Agriculture, rather than the
State Seed and Plant Board. We therefore advise you that if in the

determination of your administrative discretion, you decide
that it will be advantageous to call your inspectors in to
Dallas for a report and for instructions, such a trip would,
in the opinion of this Department, be "State business", thereby
enabling the traveling expenses of such inspectors to Dallas to
be paid from State funds.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By

David Wunteh,
Assistant.

DW:rt

APPROVED 15 1946

FIRST ASSISTANT
ATTORNEY GENERAL

